IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                         |   |                              |
|-----------------------------------------|---|------------------------------|
| ANNE COLLINS                            | * |                              |
|         Plaintiff                       | * |                              |
|         vs.                             | * | CIVIL ACTION NO. MJG-09-2020 |
| BALTIMORE CITY BOARD OF SCHOOL COMMISSIONERS | * |                          |
|                                         | * |                              |
|         Defendant                       |   |                              |

* * * * * * * * *

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it Defendant's Motion for Summary Judgment [Document 36], and the materials submitted relating thereto. The Court finds that a hearing is unnecessary.

I.   BACKGROUND

In 2006, Plaintiff Anne Collins ("Collins"), an African-American woman then in her sixties,[1] was employed by Defendant Baltimore City Board of School Commissioners (the "School System") at Patterson High School. In August 2006, the School System transferred her to Forest Park High and reduced her salary. Collins retired rather than accept the new position. After being denied relief through an internal grievance process, Collins filed a timely claim with the Equal Employment Opportunity Commission ("EEOC")

---

[1] Collins's age in 2006 is stated to be 60, 61 and 65 in various documents submitted by the parties.

1

asserting that she was a victim of race- and age-based discrimination.  Upon receipt of a "right to sue" letter,[2] Collins commenced the instant lawsuit in the Circuit Court for Baltimore City, Maryland, asserting claims for racial discrimination under 42 U.S.C. §§ 2000e, et seq. ("Title VII") and for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. ("ADEA").  This action was timely removed to this Court pursuant to 28 U.S.C. § 1441(b) because the action is founded on claims arising under the laws of the United States.

By the instant motion, the School System seeks summary judgment.

## II.  SUMMARY JUDGMENT STANDARD

The Court must grant summary judgment under Fed. R. Civ. P. 56(a) if the moving party shows "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."  Unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, to show a genuine issue for trial, then the moving party carried its burden and summary judgment will be granted.  Fed. R. Civ. P. 56(e).  To support whether

---

[2]   The EEOC concluded that "there is reasonable cause to believe that [the School System] discriminated against [Collins] because of her age (61) in violation of the ADEA.  As to all other allegations, based upon its investigation, the EEOC is unable to conclude that the information obtained establishes a violation of the statute."  EEOC Determination.

there is a genuine issue for trial, each party must cite particular materials in the record.  Fed. R. Civ. P. 56(c).  The court then assesses the merits of the motion while viewing the facts in the light most favorable to the non-moving party.  Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009); Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008).

Thus, the Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

III. DISCUSSION[3]

    A.   The Employment Action

Collins was employed by the School System from 1966 through August 2006.  In 2006, she was employed at Patterson High School, teaching Spanish and German, as the Head of the Foreign Languages

---

[3]    The "facts" stated herein are as presented by Plaintiff and, in some respects, are contradicted by Defendant.

3

Department and Director of an afterschool program called the "Twilight Program." While the parties disagree as to the reason for the action, it is undisputed that in August 2006 the School System informed Collins that she was being transferred to Forest Park High School to serve as a French teacher with a $3,000 per year reduction of salary.[4]

Collins was not a certified French teacher.[5] Collins and the Forest Park principal, Loretta Breese, agreed it was not in the students' best interest for Collins to teach French because she lacked certification. However, there was no Spanish or German teaching position available at any other school within the School System.

On August 23, 2006, Collins and Breese spoke with School System Human Resources Specialist David Lewis Bonn about the transfer. Bonn apologized for not properly checking Collins's certifications before making the transfer. Collins states that that she was

---

[4] The School System contends that the transfer was the result of a misunderstanding of Collins's wishes. Laura D'Anna, Patterson's principal, claims that in June 2006, Collins expressed interest in an assistant principal position, and after being told that one was not available to her, Collins verbally requested a transfer to another school. According to D'Anna, Collins reinforced her desire for change in a letter that referred to a "new beginning." That same month, D'Anna verbally communicated the transfer request to David Bonn, of the School System's Human Resources Department, who made the transfer assignment under the belief that Collins was certified to teach French.

[5] Collins's resume reflects that she speaks French and has taught it before, however, she is not certified to teach it.

presented with three choices: teach French at Forest Park, resign without prejudice, or retire.[6]  Collins also states that she "was encouraged to file a grievance by Bonn and by the principal of Forest Park in lieu of retirement, but would have had to accept the assignment as a French teacher in the interim pending the grievance." Collins Aff. ¶ 17.

On August 28, 2006, Collins elected to retire.


B.  Internal Grievance Proceeding

The day after retiring, on August 29, 2006, Collins filed an internal Uniform Grievance Report with the School System, asserting that her transfer was arbitrary and capricious.  An initial grievance hearing was conducted on September 20, 2006, and ultimately the grievance was withdrawn by the hearing officer as moot.  Collins appealed and was granted a hearing before a neutral hearing examiner on November 21, 2006, at which Collins was represented by the Baltimore City Teachers Union (the "Union").

The issue on appeal was stated to be "Whether [Collins] should be returned to Patterson High as a department head or teacher or was the process waived due to retirement or failure to request a hearing

---

[6] According to Bonn, he explained to Collins that she had two choices: teach French at Forest Park or return to Patterson without maintaining the department head title because Patterson was no longer authorized to employ teachers as department heads.

5

when an employed [sic] with BCPSS before retirement." Hr'g Examiner Recommendation at 1.[7]

At the hearing, counsel for the School System argued that the grievance was moot because Collins had retired before filing the grievance. Because the School System contended that the appeal should not be heard on the merits, it did not call any witnesses or address the substance of Collins's claims. Collins was the sole witness who testified on her behalf.

In his recommendation, issued on December 4, 2006, the hearing examiner noted that the proper procedure for challenging an involuntary transfer is provided in the relevant agreement between the Union and the School System:

> " . . . A teacher may request a meeting with the persons responsible for the transfer. This meeting (the three (3) day meeting) if requested, shall take place within three (3) school days of the transfer notice. . ." And,
>
> "…(i)f the three-day meeting is requested, the transfer shall not be carried out until after the three-day meeting and subsequent appeal meeting with the AEO or appropriate BCPSS administrator have taken place."

Hr'g Examiner Recommendation at 6.

---

[7] The Court declines to give the findings of fact and conclusions reached by the hearing examiner preclusive effect as requested by Collins, but, as is required in a motion for summary judgment, views the facts presented herein in the light most favorable to Collins, the non-moving party.

6

While the hearing examiner expressed regret that "BCPSS lost a valuable employee to retirement," he concluded that "Respondent failed to avail herself of the administrative process to request a 'three day hearing' prior to reporting to her new teaching assignment to determine if the involuntary assignment was based on sound reasoning of management or based on arbitrary and capricious reasoning." Id. at 7-8.

The Hearing Officer made three recommendations to the School System: (1) that Collins's appeal to revive her grievance be denied based both on mootness and on the merits; (2) that Collins be given top priority for reemployment after retirement as a Spanish or German teacher or department head; and (3) that Collins be given an explanation as to why she was transferred.

On January 23, 2007, the School System considered and reviewed the Hearing Officer's recommendation and took the following actions:

>    1. Denied the Hearing Officer's recommendation, and affirmed that [Collins] be given top priority for reemployment after retirement as a Spanish or German teacher or department head as authorized by the rules governing Reemployment After Retirement.
>
>    2. Held that Collins receive an explanation by the Administration as to why she was transferred from Patterson High School to Forest Park Senior High.

School System Order March 6, 2007.

7

### C. The Race-Based Discrimination Claim

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).

In a discrimination lawsuit – as in the instant case – in which there is no direct evidence of discrimination, a plaintiff may proceed under the burden-shifting approach that the Supreme Court developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981), (quoting McDonnell Douglas, 411 U.S. at 802, 804).

#### 1. Prima Facie Case

To establish a prima facie case of discrimination, a plaintiff must prove (1) that she belongs to a protected class; (2) that she suffered an adverse employment action; (3) that at the time of the adverse employment action, she was performing at a satisfactory level

8

that met her employer's legitimate expectations; and (4) following the adverse employment action, she was replaced by a person outside the protected class.  See McDonnell Douglas, 411 U.S. at 802; Parish v. Siemens Med. Solutions USA, Inc., 429 Fed. Appx. 216, 218 (4th Cir. 2011).  The plaintiff, however, always bears the burden of persuasion.  Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007).

          a.    Protected Group

Collins, an African-American is a member of a protected group.

          b.    Adverse Employment Action

Collins alleges that her transfer was both a demotion and a constructive discharge, forcing her to retire.

An adverse employment action has been defined as a "discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment."  James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)(internal quotation marks omitted).  A constructive discharge can be an "adverse employment action."  See, e.g., James, 368 F.3d at 378.  "A constructive discharge involves both an employee's decision to leave and precipitating conduct."  Pa. State Police v. Suders, 542 U.S. 129, 148 (2004).  "To establish constructive discharge, a plaintiff

9

must be able to show that [her] former employer 'deliberately made an employee's working condition intolerable, and thereby forced [her] to quit.'"  James, 368 F.3d at 378.

The School System may have a viable position regarding various aspects of Collins adverse employment action contention.  However, the Court finds the evidence sufficient to permit a finding that that she suffered an adverse employment action based, at least, on the reduction of her salary.[8]

### c.   Satisfactory Performance

There is no reason to doubt that Collins was performing satisfactorily in her employment at Patterson High School.

### d.   Replacement By Caucasian

To satisfy the fourth element of her prima facie case, Collins must establish that a member of an unprotected class replaced her.

---

[8]   According to the Human Resources Change Form generated by the School System, the transfer was a demotion that resulted in a substantial salary reduction and loss of title.  Reassignment can form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect on her. Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999) (noting that decreases in compensation, job title, level of responsibility, or opportunity for promotion are indicators of an adverse employment action).

Collins contends that Kelly Flores, a Caucasian Spanish teacher replaced Collins as Head of the Foreign Languages Department.[9]

There is a serious question whether Collins was, in actuality, the Head of a Department in a meaningful sense.[10] Moreover, even if Collins had been a Department Head, it is doubtful that this position was filled by Flores after Collins transferred. Collins appears to rely on the deposition testimony of a former French teacher who stated that "it seemed like" Flores took over Collins's duties as department head, because "Ms. Flores worked out of her office sometimes" and "she was kind of the go-to person for foreign language or ESOL questions that we might have had." Edwards Dep. 12-13. Yet, the teacher also notes states Flores did not take a Department Head's reduced teaching schedule. Also, at her deposition, Flores

---

[9] Tiffany Clark, an African-American woman who was 35 years old in 2006, replaced Collins as the Director of the Twilight Program. The parties appear to agree that Collins's transfer from Patterson to Forest Park did not necessarily sever her involvement in the Twilight Program. See Pl.'s Resp. 6.

[10] The School System contends that Collins was not technically a department head at Patterson during the 2005-2006 school year because the title of "Department Head" was being phased out. According to this staffing model change, principals now designate a teacher as an "Instructional Support Teacher" ("IST"), a less formal, non-managerial position that is a one-year appointment. The process for the staffing model change was to abolish each individual department head position once an employee left that position. Thus, the department head position would not follow a transferring employee. Because of this staffing model change, the School System claims that Collins was not replaced by anyone in that position. Moreover, it claims that the Foreign Languages Department did not have an IST between 2006 and 2011.

testified that she neither received a pay increase nor a promotion when Collins left.

The Court will, nevertheless, assume that there is sufficient evidence to establish the fourth element of Collins's prima facie case.

### 2. Non-Discriminatory Reason

Under the second step of the McDonnell-Douglas framework, the School System is required to articulate a legitimate, nondiscriminatory reason for transferring Collins to Forest Park. See 411 U.S. at 802.

Principal D'Anna testifies that Collins expressed her desire to transfer both in a conversation and in a letter. Human Resources Specialist Bonn testifies that he facilitated this transfer under the misapprehension that Collins was certified to teach French.

The School System has, therefore, articulated non-discriminatory reasons for the employment action at issue. Accordingly, Collins must to prove that the School System's stated reasons were not its true reasons but were a pretext for racial discrimination.

12

### 3. Discriminatory Pretext

Collins must present evidence adequate to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons but were a pretext for discrimination. See Adams, 640 F.3d at 558-59.

Collins argues that she has met the burden by evidence of (1) the School System's failure to follow the proper procedures for a transfer, (2) the fact that one of Collins's alleged replacements is Caucasian and was less qualified than Collins, (3) the School System's "shifting reasons" for Collins's transfer, (4) the "shifting testimony" on what position she held, and (5) the "lack of any legitimate business reason" for her transfer.  Pl.'s Resp. 12, 18.  Moreover, Collins argues that Principal D'Anna demonstrated animosity towards her by changing the locks, failing to return her to Patterson, and failing to verify previous employment to potential future employers.

Even viewing the evidence as favorably to Collins as reasonable possible, there is insufficient evidence to establish a racially discriminatory intent on the part of the School System.  There is nothing that tends to indicate that Collins's race had anything at all to do with her transfer.  Accordingly, the School System is entitled to summary judgment on Collins's race-based discrimination claim.

13

D.  Age Discrimination Claim

Under the Age Discrimination in Employment Act ("ADEA') . . . it is "unlawful for an employer . . . [to] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).

To prevail in an ADEA claim, a plaintiff who has no direct evidence of age discrimination the plaintiff must prove that (1) she is a member of a protected class - that is, 40 years or older; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or she was replaced by a substantially younger person.  Bodkin v. Town of Strasburg, 386 Fed. Appx. 411, 413-14 (4th Cir. 2010) (citing Hill v. Lockheed Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004)).

The discussion relating to Collins's race-based discrimination claim is pertinent to her age-based discrimination claim.  Thus, for the same reasons stated above, the Court will assume that Collins has established a prima facie case and finds that the School System has articulated legitimate non-discriminatory reasons for the employment action at issue.

The burden to show pretext and discriminatory intent is higher on an age discrimination claim than it is on a race-based discrimination claim.  "The ADEA does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor."  Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343, 2349 (2009).  To succeed on an ADEA claim, the plaintiff "must prove, by a preponderance of the evidence (which may be direct or circumstantial), that the age was the 'but-for' cause of the challenged employer decision."  Id. at 2351.

To prove that the School System discriminated against her because of her age, Collins adds to the above-noted evidence her "own observations and personal experiences . . . when it came to hiring in department of foreign language Ms. Laura D'Anna hired younger candidates."  Collins Aff. ¶ 28.  This is manifestly inadequate.  The Court finds that Collins has not produced evidence adequate to support a finding that the School Systems' articulated non-discriminatory reasons for the employment action at issue were pretextual and that she would not have been transferred but for her age.

Accordingly, the School System is entitled to summary judgment on Collins' age-based discrimination claim.

IV.   CONCLUSION

For the foregoing reasons:

1. Defendants' Motion for Summary Judgment [Document 36] is GRANTED.

2. Judgment shall be entered by separate Order.

SO ORDERED, this Tuesday, November 22, 2011.

                              /s/
                        Marvin J. Garbis
                   United States District Judge